IN THE COURT OF COMMON PLEAS
WARREN COUNTY, OHIO

**SANDRA LESLIE**
425 Crossbow Drive
Maineville, OH 45039

And

**DONALD WALL**
425 Crossbow Drive
Maineville, OH 45039

    Plaintiffs

v.

**TRAVEL and LEISURE CO.**
℅ WYNDHAM WORLDWIDE
OPERATIONS, INC.
6277 SEA HARBOR DRIVE
ORLANDO FL 32821

And

**BARCLAYS BANK DELAWARE**
℅ CORPORATION SERVICE COMPANY
1160 DUBLIN ROAD, SUITE 400
COLUMBUS OH 43215

    Defendants.

Case No. **25CV99309**

JUDGE **PEELER**

<u>**COMPLAINT FOR DAMAGES**</u>

**JURY DEMAND ENDORSED HEREON**

Plaintiffs Sandra Leslie and Donald Wall and for their Complaint for Damages against Defendants Travel and Leisure Co. and Barclays Bank Delaware hereby state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs Sandra Leslie ("Sandra") and Donald Hall ("Donald") (collectively, the "Plaintiffs") are each natural persons who reside in the City of Maineville, County of Warren, State of Ohio and Plaintiffs have resided at this location for all relevant times herein.

1

2. Each of the Plaintiffs are a "consumer" as that term is defined by R.C. 1345.01(D).

3. Each of the Plaintiffs are a "cardholder" as that term is defined by 15 U.S.C. § 1602(n).

4. Defendant Travel and Leisure Co. f/k/a Wyndham Destinations ("Wyndham") is a foreign corporation incorporated under the laws of the State of Delaware that is registered with the Ohio Secretary of State and does business in Ohio.

5. Defendant Wyndham is the largest vacation ownership company in the world and owns numerous brands and subsidiary corporations relevant to the allegations herein including by not limited to Wyndham Consumer Finance, Inc., Wyndham Destination Network, LLC, Wyndham Resort Development Corporation, Wyndham Vacation Ownership, Inc., and Wyndham Vacation Resorts, Inc.

6. Defendant Wyndham is a "supplier" as that term is defined by R.C. 1345.01(C) because it is engaged in the business of effecting or soliciting consumer transactions. In this case, Defendant Wyndham engaged in the business of promoting and selling vacation packages/timeshares/vacation clubs that allow consumers to purchase timeshare interests.

7. Defendant Barclays Bank Delaware ("Barclays") is a commercial bank, incorporated under the laws of the State of Delaware that is registered with the Ohio Secretary of State and regulated by the Office of the Comptroller of the Currency.

8. Venue lies in this Court pursuant to Civ. R. 3(C)(3) and/or Civ. R. 3(C)(7) and/or Civ. R. 3(C)(12) as Warren County is the venue where the Plaintiffs resided and were solicited by Defendants in order to conduct the activity that gave rise to this Complaint.

## INTRODUCTION

9. Plaintiffs' transactions with Defendant Wyndham each constitute a consumer transaction as that term is defined by R.C. 1345.01(A) because the contracts were for a service for personal, family or household use, namely the purchase of an interest in time share properties or vacation club points to be used at various properties owned by Defendant Wyndham.

10. Plaintiffs have a private right of action under R.C. 1345.09 for the allegations and transactions described herein as applicable.

11. Plaintiffs have a private right of action pursuant to Tenn. Code Ann.. § 66-32-118(a) for the allegations and transactions described herein as applicable.

12. Plaintiffs have a private right of action pursuant to 15 U.S.C. § 1640 for the allegations and transactions described herein as applicable.

## STATEMENT OF FACTS

13. Plaintiff Sandra Leslie is currently 83 years of age and her husband, Plaintiff Donald Wall, is 88 years of age.

14. On or about August 17, 2024 Plaintiffs attended a sales presentation by Defendant Wyndham in Pigeon Forge, Tennessee which lasted for six (6) hours.

15. At that presentation, through the aggressive sales tactics of Defendants' representatives Plaintiffs were talked into purchasing an interest in "CW Preferred West." This transaction had a total cost of $25,279.00 with a down payment of $3,787.35 and closing costs of $30.00 (contract ending in 1021). The payment was charged to a newly opened Barclays Credit Card issued by Defendants (5381) as part of the sale. A copy of the contract ending in 1021 is attached as **Exhibit 1**.

16. At the time of allegedly signing the paperwork to purchase an interest in "CW Preferred West" and apply for the Credit Card Plaintiffs were not presented any documentation to review in advance, were only provided an opportunity to review documents electronically and sign in the same manner, did not understand the terms of the agreement, and were intentionally, negligently, or fraudulently mislead as to the terms and conditions in addition to the benefits and costs of the Credit Card and the time-share.

17. Additionally, upon information and belief the required credit card disclosures were not provided to Plaintiffs.

18. Mr. Wall has no recollection of reading or signing any documents regarding the CW Preferred transaction.

19. Plaintiffs were not provided paper copies of the 1021 for at least two months.

20. Concerned about the situation they found themselves in, and knowing that they could not afford the expense nor utilize the benefit of using the time-share, Plaintiffs on or about October 28, 2024 reached out to Defendant Wyndham whose representatives, upon information and belief spoke to "Parker" and "Annika" in a transaction they to this day do not understand, talked the Plaintiffs into trading in the Contract with CW Preferred West (1021) for an ownership interest in ClubWyndham Access Vacation Ownership Plan "(AVOP") (contract ending in 0810). A copy of the purchase documents is attached hereto as **Exhibit 2.**

21. This transaction required a payment of $2,705.29 which was charged to another newly opened Barclays Credit Card (4611).

22. At the time of allegedly signing the paperwork to purchase an interest in "AVOP" and apply for the Credit Card Plaintiffs were not presented any documentation to review in advance, were only provided an opportunity to review documents electronically and sign in the

4

same manner, did not understand the terms of the agreement, and were intentionally, negligently or fraudulently misled, as to the terms and conditions in addition to the benefits and costs of the Credit Card and the time-share.

23. Additionally, upon information and belief the required credit card disclosures were not provided to Plaintiffs.

24. Mr. Wall has no recollection of reading or signing any documents regarding the AVOP transaction.

25. As part of the purchase of AVOP with the Wyndham/Barclays Credit Card, Plaintiffs were given a membership in RCI/Club Wyndham Plus/Wyndham Rewards Program (Wyndham Rewards"). Upon information and belief this is a contract or account ending in 5418. See Exhibit 2.

26. The Wyndham Rewards, on information and belief, is a rewards-based program based on the accrual of points connected to the Credit Card(s) issued by the Defendants.

27. Additionally, upon information and belief the required Credit Card disclosures were not provided to Plaintiffs

28. Mr. Wall has no recollection of ever signing any of the documents bearing his electronic signature.

29. Plaintiffs thereafter were called by Wyndham and offered a "free" 3-day/2-night stay at Springhill Suites at Christmas Tree Lane in Pigeon Forge, TN so long as they attended a two-hour presentation.

30. Plaintiffs accepted that offer and were told that failure to attend the presentation would cost them $150.00 and cancellation would cost $75.00.

31. On December 16, 2024, Plaintiffs traveled to Pigeon Forge, TN to use the "free" stay as their anniversary was the previous day.

32. At the presentation which in reality was five-half hours not two hours as previously communicated, Plaintiffs repeatedly informed Diane aka "DD" that they wanted out of all contracts and to leave the presentation. DD told Plaintiffs that they would have to pay for a year of the contract from December 2024 - December of 2025 and then they could then opt-out of the contract(s).

33. Through the aggressive sales tactics of Defendants' representatives DD and others Plaintiffs were talked into in a transaction they to this day do not understand into "cashing in" the "points" from the 5418 contract/account and trading in the 0810 contract to apply to a down payment for yet another time-share "Club Wyndham Access" (contract ending in 2735). A copy of contract 2735 is attached hereto as **Exhibit 3.**

34. This new contract dated December 17, 2024, after applying the "equity" from the traded contracts in the amount of $5,460.56 cost Plaintiffs another downpayment of $7,096.95 and closing costs of $25.00 which was charged to a third Credit Card issued by the Plaintiffs (4611).

35. As with the other contracts, Plaintiffs were not presented any documentation to review in advance, were only provided a manner to review the documents electronically and sign in the same manner, did not understand the terms of the agreement, and were intentionally, negligently or fraudulently mislead, as to the terms and conditions in addition to the benefits and costs of the Credit Card and the time-share.

36. Mr. Wall has no recollection of ever signing any of the documents bearing his electronic signature.

37. Additionally, upon information and belief the required credit card disclosures were not provided to Plaintiffs.

38. Plaintiffs thereafter were offered a "free" stay from January 27 - February 3, 2025 at Wyndham Bonnet Creek Resort in Lake Buena Vista, Florida with no conditions.

39. Plaintiffs, because they had family nearby, accepted that offer and traveled to Lake Buena Vista to take advantage of the "free" stay.

40. Plaintiffs while at Wyndham Bonnet Creek Resort again told Defendant Wyndham's representatives they wanted out of the contracts and that they wanted to talk to someone in the corporate office (based in Orlando, Florida) and did not want to talk to a sales agent or attend another presentation.

41. Plaintiffs were directed to talk to an "Alex Taylor" who was from "corporate" the next day in Orlando but, as luck would have it, "just happened" to be at the Bonnet Creek Resort that day.

42. Plaintiffs on January 28, 2025 met with Alex Taylor and "Anthony" whom Plaintiffs informed repeatedly they wanted out of the contracts and the credit cards.

43. At that meeting which lasted from noon until 8:30p.m. in another transaction they to this day do not understand, Alex and Anthony talked Plaintiffs into entering yet another contract (0559) under the guise of downsizing and that Plaintiffs could then opt-out of everything after four (4) months because of Plaintiffs age. Plaintiffs were instructed not to tell this to anyone. A copy of the purchase documents is attached hereto as **Exhibit 4.**

44. This fourth contract dated January 28, 2025 was to purchase an interest in Wyndham Bonnet Creek Resort located even farther away in Florida.

45. After applying the "rewards" Plaintiffs apparently had on either one or both of the Credit Cards in the amount of $11,374.39 as the down payment, cost Plaintiffs financed another loan of $17,313.14 to be paid via auto pay on a credit card previously issued by the Defendants.

46. The fourth contract increased the total debt owed to Wyndham from $62,679.49 to $79,992.63, requiring a monthly payment of $1,242.62 and a monthly maintenance fee of $384.67. *Id.*

47. As with all previous contracts, Plaintiffs were not presented any documentation to review in advance, were only provided a manner to review the documents electronically and sign in the same manner, did not understand the terms of the agreement, and were intentionally, negligently or fraudulently mislead, as to the terms and conditions in addition to the benefits and costs of the Credit Card and the time-share.

48. Plaintiffs made and continued to attempt to make the monthly payment to the credit cards; but by May of 2025 found themselves unable to afford the astronomical payments.

49. After defaulting in or around May 2025 on the credit cards issued by Defendants, Plaintiffs began to receive numerous telephone calls regarding the

## COUNT ONE: AGAINST WYNDHAM
## VIOLATION OF THE CSPA. R.C. 1345.01, et seq.

50. Plaintiffs allege and incorporate herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

51. As demonstrated by the allegations set forth in the preceding paragraphs, the transactions between the Plaintiffs and Defendants are "consumer transactions" as the Plaintiffs' transactions with the Defendants was for personal, household, and/or family use, specifically for a timeshare interest or the purchasing of points to be used at Defendant Wyndham's properties and financed by Defendant Barclays.

52. As demonstrated above, *supra*, and demonstrated by Exhibits 1-4, Wyndham engaged in a series of unfair, unlawful and/or deceptive acts by:

   a. Failing to provide documents in a form readable for the Plaintiffs at the time of signing the contracts.

   b. Using high pressure sales tactics to prey upon the elderly.

   c. Being pressured into multiple upgrades or trade-ins over the course of six (6) months.

   d. Coercing the Plaintiffs to enter into agreements when Defendants knew, or should have known, of their inability to understand the transaction(s);

   e. Wyndham's conduct relating to their sales presentations constituted a "bait and switch" tactic by advertising items to lure the Plaintiffs, then inducing them to buy different and more expensive contracts when the consumer could not afford the first contract.

   f. Requiring or pressuring the Plaintiffs to open at least three (3) credit cards issued by the Defendants.

   g. Intentionally and/or negligently, Wyndham sales agents omitted or misrepresented to Plaintiffs the facts regarding the price, costs, expenses, and/or values of the Wyndham timeshare properties/points being sold to Plaintiffs.

   h. Plaintiffs were afforded a credit in the amount of their so called "equity" under an existing timeshare; however, this amount constituted a false and fraudulent statement for the sole purpose of convincing Plaintiffs to increase the ownership and to incur further indebtedness and monetary obligations to Defendants.

i. Intentionally and/or negligently, Plaintiffs were falsely told by Wyndham that Wyndham would buy the timeshare back if Plaintiffs were not happy with the purchase.

j. Intentionally and/or negligently, Plaintiffs were falsely told by Wyndham that Plaintiffs could opt-out of certain contracts after various amounts of time or payments.

k. Plaintiffs were forced to make pressured and hurried decisions by Wyndham and forced to sit through hours-long sales presentations or meetings with financial penalties attached for not doing so.

53. Wyndham's actions, as described herein constitute deceptive, unfair, and/or unconscionable acts and practices in violation of R.C. 1345.02.

54. The actions of Defendant described herein is conduct which is subject to treble damages under the CSPA. See *In re Bluegreen Vacations.*, PIF No. 10002067 (April 2002), *State of Ohio ex rel. Montgomery* PIF No. 10001817. A copy of PIF Nos. 10002067 and 10001817 are attached as **Collective Exhibit 5.** The Ohio Attorney General has made these determinations available for public inspection pursuant to R.C. 1345.05(A)(3).

55. As a result of Wyndham's actions, Wyndham is liable to each Plaintiff for actual damages, statutory damages, non-economic damages of up to Five Thousand Dollars ($5,000.00), treble damages, costs, and attorneys' fees pursuant to R.C. 1345.09.

### COUNT TWO: AGAINST WYNDHAM
### VIOLATION OF THE TENNESSEE TIMESHARE ACT

56. Plaintiffs allege and incorporate herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

57. Wyndham operates a multisite timeshare plan in which the purchaser purchases

an interest as defined by The Tennessee Time-Share Act Tenn. Code Ann. § 66-32-101, *et seq.*

58. As described above, the actions of Wyndham have violated and continue to violate the Tennessee Time-Share Act.

59. At all relevant times, Wyndham and its subsidiaries were developers, sellers, and/or managing entities of a timeshare plan under the Tennessee Time-Share Act.

60. The Tennessee Time-Share Act specifically prohibits misleading oral statements from being made in a timeshare sales presentation.

61. Wyndham made numerous oral misrepresentations to Plaintiffs, as described *supra*.

62. Wyndham used the misrepresentations and omissions by its agents to induce Plaintiffs into signing the timeshare contracts.

63. These misrepresentations were false, or Wyndham knew or should have known them to be false, and the misrepresentations were made for Wyndham's financial gain.

64. Plaintiffs reasonably relied on the foregoing misrepresentations, reassurances, and omissions by Defendants, which induced Plaintiffs into purchasing timeshare properties/points from Wyndham.

65. Plaintiffs would not have entered into the purchase agreements but for these misrepresentations, reassurances, and omissions.

66. As a direct and proximate result of Wyndham's foregoing violations of the Tennessee Time-Share Act, Plaintiffs suffered damages and are entitled to recover damages, including but not limited to actual and punitive damages, and reasonable attorneys' fees, from Wyndham.

**COUNT THREE: AGAINST BOTH DEFENDANTS**
**VIOLATION OF THE TRUTH IN LENDING ACT**

### 15 U.S.C. §§ 1601 et seq., Regulation Z

67. Plaintiffs allege and incorporate herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

68. TILA, 15 U.S.C. § 1601, *et seq.* was implemented by 12 C.F.R. Part 1026, commonly referred to as Regulation Z (Reg. Z).

69. Under TILA, the term "creditor" includes a person who both regularly extends consumer credit for which the payment of a finance charge is or may be required, and is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or by agreement. The term "creditor" also includes card issuers where the payment of a finance charge is or may be required. *See* 15 U.S.C. § 1602(g).

70. TILA defines "card issuer" as "any person who issues a credit card, or the agent of such person with respect to such card." 15 U.S.C. § 1602(o).

71. The credit cards issued by Defendant Barclays were issued under an open-end consumer credit plan by agreement with Plaintiff, where the payment of a finance charge may be required, and therefore, Barclays is a "card issuer" as defined by the TILA.

72. Wyndham is a "card issuer" as that term is defined by 15 U.S.C. § 1602(o) as it was or is an agent of Defendant Barclays who issued the credit cards more at issue *supra*.

73. 15 U.S.C. § 1631, *et seq.* requires creditors to make certain disclosures as set forth within that subsection.

74. Specifically, in regards to an open-end consumer credit plan, such as the credit cards issued by Defendants herein to Plaintiffs herein, 15 U.S.C. § 1631(c) sets forth the disclosures required to be made and provided to Plaintiffs at the time they were coerced into applying for the three (3) credit cards described *supra*.

75. The disclosures required by TILA must be "clearly and conspicuously disclosed" pursuant to 15 U.S.C. § 1632(a); 12 C.F.R. § 1206.5(a).

76. The "clear and conspicuous" standard generally requires that disclosures be in a reasonably understandable form. See Official Interpretations - Comment for 1026.5(a)(1).

77. Plaintiffs were not provided the required disclosures in a format they could read nor given an opportunity to read them or keep them in violation of 15 U.S.C. §§ 1631 and 1632.

78. Plaintiffs did not have an opportunity to review the disclosures and Mr. Wall has no recollection of signing any disclosures and therefor did not request or agree to the disclosure being provided in electronic format. See 12 C.F.R § 1206.5(a)(1).

79. Defendants' acts and omissions as set forth *supra* were not unintentional, but rather part of a deliberate pattern and practice to coerce the sale of timeshares and opening of credit cards to fund the timeshare purchases.

80. Upon information and belief Defendant(s) does not maintain (i.e., actually employ or implement) procedures to avoid errors under the TILA.

81. Any procedures maintained (i.e., actually employed or implemented) by Defendant(s) to avoid errors under the TILA failed to avoid using false, deceptive, misleading, or unfair sales tactics when selling timeshares and/or offering to open or the opening of credit cards to fund the timeshare purchases.

82. The acts and omissions of Defendants as set forth *supra* constitute numerous violations of TILA, Reg. Z and thus Plaintiffs are each entitled to actual damages, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established

pattern or practice of such failures; costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1640(a)(1), (a)(2)(A)(i), and (a)(3).

### COUNT FOUR: AGAINST WYNDHAM
### NEGLIGENT MISREPRESENTATION

83. Plaintiffs allege and incorporate herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

84. Defendant was acting in the course of their business.

85. During the dealings with Plaintiffs, Defendant negligently supplied false information as set forth herein.

86. Defendant intended the information to guide Plaintiffs in Plaintiffs' purchases and credit transactions.

87. Plaintiffs relied upon Defendants' representations during the sale of the timeshares and credit card solicitations which substantially influenced their decision to purchase the timeshares and open the credit cards.

88. Plaintiffs justifiably relied upon the false information, guidance, knowledge and suggestions of Defendant.

89. Defendant's representations were false, and Defendant failed to exercise reasonable care in communicating the information to Plaintiffs.

90. As a direct and proximate result of Defendants negligent misrepresentations, Plaintiffs suffered a financial loss and are now in substantial debt which they cannot afford.

91. Plaintiffs would not have entered into the transactions without Defendants' representations.

92. As a direct and proximate result of Defendant's negligent misrepresentation, Plaintiffs are entitled to recover actual and punitive damages.

## COUNT FIVE: AGAINST WYNDHAM
## FRAUDULENT INDUCEMENT

93. Plaintiffs allege and incorporate herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

94. Defendant was acting in the course of its business.

95. Defendant, by and through its employees/agents and with actual and/or constructive knowledge, made fraudulent misrepresentations regarding the timeshares as set forth herein.

96. The Defendants' fraudulent representations were done with utter disregard and recklessness as to the truth or falsity of the timeshare purchase agreements including but not limited to value, use, ability to resell or cancel, and monthly cost of ownership.

97. Defendant intended the information to guide Plaintiffs in Plaintiffs' purchases and credit transactions.

98. Plaintiffs relied upon Defendants' fraudulent representations during the sale of the timeshares which substantially influenced their decision to purchase the timeshares and open the credit cards.

99. Plaintiffs would not have entered into the transactions without Defendant's fraudulent representations.

100. Plaintiffs justifiably relied upon the false information, guidance, knowledge and suggestions of Defendant and was fraudulently induced to purchase the timeshares and open the credit cards in reliance thereon.

101. Defendant's representations were false, and Defendant failed to exercise reasonable care in communicating the information to Plaintiffs.

102. As a direct and proximate result, Plaintiffs suffered a financial loss and are now in substantial debt which they cannot afford.

103. Plaintiffs would not have entered into the transactions without Defendant's representations.

104. As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiffs are entitled to recover actual and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Sandra Leslie and Donald Wall respectfully request an Order from this Court granting Judgment against Defendants, as follows:

A. For recission of the timeshare contracts for the allegations contained in Count One of the Complaint pursuant to pursuant to R.C. 1345.09(A) and/or (B);

B. For or an award of actual, statutory, and treble damages to Plaintiffs in a total amount to be determined at trial against Defendant Wyndham for the allegations contained in Count One of the Complaint pursuant to R.C. 1345.09(A) and/or (B);

C. For an award of non-economic damages of up to $5,000.00 to each Plaintiff against Defendant Wyndham for the allegations contained in Count One of the Complaint pursuant to R.C. 1345.09(A) and/or (B);

D. For an award of all of Plaintiffs' reasonable attorneys' fees and costs against Defendant Wyndham for the allegations contained in Count One of the Complaint R.C. 1345.09(F)(2);

E. For or an award of actual damages to Plaintiffs in a total amount to be determined at trial against Defendant Wyndham for the allegations contained in Count Two of the Complaint pursuant to Tenn. Code Ann. §66-32-118;

F. For or an award of punitive damages to Plaintiffs for any action found to be willfully taken by Defendant Wyndham in a total amount to be determined at trial against Defendant Wyndham for the allegations contained in Count Two of the Complaint pursuant to Tenn. Code Ann. §66-32-118;

G. For an award of all of Plaintiffs' reasonable attorneys' fees against Defendant Wyndham for the allegations contained in Count Two of the Complaint pursuant to Tenn. Code Ann. §66-32-118;

H. For an award of actual damages to Plaintiffs in an amount to be determined at trial against both Defendants pursuant to 15 U.S.C. § 1640(a)(1) for the allegations contained in Count Three of the Complaint;

I. For an award of statutory damages to Plaintiffs in an amount to be determined at trial against both Defendants pursuant to 15 U.S.C. § 1640(a)(2)(A)(i) for the allegations contained in Count Three of the Complaint;

J. For an award of all of Plaintiffs' reasonable attorneys' fees and costs against both Defendants for the allegations contained in Count Three of the Complaint pursuant to 15 U.S.C. § 1640(a)(3);

K. For an award of all actual, nominal, statutory, compensatory, consequential, incidental, enhanced, and punitive damages as well as restitution and disgorgement as allowed by law or equity to Plaintiffs against Defendant Wyndham for the allegations contained in Count Four and/or Five of the Complaint; and

L. For all other relief this Court deems just and proper.

Respectfully submitted,

/s/ Brent S. Snyder
Brent S. Snyder (0104059)
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Marita I. Ramirez (0101882)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
216/373-0539
216/373-0536 – fax
notices@dannlaw.com
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs Sandra Leslie and Donald Wall hereby demand a jury for all issues herein that are so triable.

/s/ Brent S. Snyder
Brent S. Snyder (0104059)
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Marita I. Ramirez (0101882)
DannLaw
*Counsel for Plaintiffs*